**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 20-cv-1088-WJM-KLM

ANDREW COLLINS,

    Plaintiff,

v.

WESTIN DIA OPERATOR, LLC,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

Plaintiff Andrew Collins brings this premises liability action against Defendant Westin DIA Operator, LLC, a Marriot entity.

This matter is before the Court on Defendant's Motion to Dismiss (the "Motion"), filed on June 16, 2020.  (ECF No. 11.)  For the reasons set forth below, the Motion is granted.

## I.  BACKGROUND

The following factual summary is drawn from Plaintiff's First Amended Complaint and Demand for Jury Trial ("Amended Complaint") (ECF No. 9), except where otherwise noted.  The Court assumes the allegations contained in the Amended Complaint to be true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiff is a pilot for United Airlines.  (¶ 31.)[2]  Defendant operates the DIA Westin Hotel located at 8300 Pena Boulevard, Denver, Colorado (the "DIA Westin").  (¶ 32.)

On September 19, 2018, United Airlines assigned Plaintiff to an overnight layover in Denver at the DIA Westin.  (¶ 59.)  A DIA Westin employee assigned Plaintiff to Room 1017, a north-facing room on the hotel's tenth floor, which is approximately 100 yards away from the south end of the Denver International Airport ("DIA") terminal. (¶¶ 41, 60.)

On the morning of September 20, 2018, Plaintiff partially opened the curtains to his hotel room.  (¶ 61.)  From his vantage point, "the hotel window appeared to have a tinted or mirrored composition, resembling other high-quality large city hotel windows that prevent people outside the hotel from seeing into a hotel room."  (¶ 62.)  Plaintiff planned to take a shower in his hotel room but decided to first engage in a phone conversation.  (¶ 64.)  Plaintiff was not warned that he was visible in his room from the DIA terminal and was thus "unaware that the sunlight reflecting off the DIA terminal's south windows and pouring into his room acted as a spotlight—effectively removing any of the privacy he assumed he had within his hotel room."  (¶¶ 13, 66.)

That morning, law enforcement approached DIA Westin employees to seek access to hotel rooms on the tenth floor, claiming that "some individuals in the DIA terminal building saw an unclothed man standing in a hotel room on the tenth floor looking out the window."  (¶¶ 7, 10.)

---

[2] Citations to paragraph numbers, without more, *e.g.* (¶__), are to paragraphs in the Amended Complaint.  (ECF No. 9.)

At around 11:00 a.m., Plaintiff heard a loud knocking on his hotel door, followed by an announcement by Denver Police Department ("DPD") Officer Karl Coleman stating, "We are coming in with or without your permission, so open the door!"  (¶ 67.) When Plaintiff opened the door, the DPD officers handcuffed and arrested him.  (¶ 68.) The DPD officers were accompanied by DIA Westin employees.  (¶ 69.)  Thereafter, another DPD officer "went to the hotel room window and waved her arms wildly so that an individual in the terminal could see her and attempt to confirm that" the police had entered the correct room.  (¶ 76.)

DPD officers neither sought nor obtained a warrant to enter Plaintiff's hotel room, and they did not advise Plaintiff of his *Miranda* rights.  (¶¶ 70–72.)  Nonetheless, none of the DIA Westin employees: (1) demanded to see a warrant before assisting the police to violate Plaintiff's privacy rights or otherwise "resisted the unconstitutional violations of [Plaintiff's privacy rights]"; (2) "reached out to management or counsel to ensure that they were acting in accordance with the law or Marriot policies by assisting" DPD officers who demanded access to Plaintiff's room; (3) attempted to call Plaintiff "to advise guests to close their shades or otherwise cover their bodies"; or (4) "visited the tenth floor without [DPD] officers to determine whether any guests needed to be advised they were visible from the DIA terminal while unclothed."  (¶¶ 81–85.)

When Plaintiff asked Officer Coleman why he was being arrested, Officer Coleman informed him that he was being arrested for lewd acts and indecent exposure. (¶ 74.)  Approximately eight minutes after DPD officers had entered Plaintiff's hotel room, DPD Sergeant Pfannkuch "received clarification over police communications" that nobody had observed Plaintiff commit lewd acts.  (¶ 77.)  Nonetheless, although this

3

communication was received "in the presence and hearing of DIA Westin personnel," "DIA Westin personnel declined to intervene in the wrongful arrest despite their knowledge that the arrest was based on a false accusation." (*Id.*)

Plaintiff states that this arrest "harmed his career, harmed his family, and ruined his chances to serve his fellow pilots as" the next president of the Air Line Pilots Association. (¶ 26.)

Plaintiff filed this lawsuit on April 17, 2020 (ECF No. 1) and filed the Amended Complaint on May 15, 2020 (ECF No. 9). Plaintiff asserts the following claims against Defendant: (1) premises liability resulting from Defendant's failure to properly train its employees (¶¶ 86–101); (2) premises liability resulting from Defendant's failure to warn hotel guests about the non-tinted windows (¶¶ 102–16); (3) negligence resulting from Defendant's failure to warn Plaintiff of dangers on its premises (¶¶ 117–27); (4) conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3) (¶¶ 128–48); (5) negligence resulting from Plaintiff's failure to protect Plaintiff from being harassed (¶¶ 149–57); (6) negligent hiring and training (¶¶ 158–66); and (7) intentional infliction of emotional distress (¶¶ 167–73).

Defendant filed the Motion on June 16, 2020. (ECF No. 11.) Plaintiff responded on July 7, 2020 (ECF No. 12), and Defendant replied on July 20, 2020 (ECF No. 18).

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

4

legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III.  ANALYSIS

**A.      Premises Liability Claims**

Plaintiff asserts two premises liability claims: (1) premises liability resulting from Defendant's failure to properly train its employees; and (2) premises liability resulting from Defendant's failure to warn hotel guests that the DIA Westin's windows are not tinted.  (¶¶ 86–116.)

Under the Colorado Premises Liability Act ("CPLA"), "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."  Colo. Rev. Stat. § 13-21-115(3)(c)(1).  For purposes of the Motion, the parties agree that Defendant was a landowner and that Plaintiff, a guest at Westin DIA, was an invitee.[1] (ECF No. 12 at 5; ECF No. 18 at 7.)

Defendant argues that Plaintiff has not adequately pled either of its premises liability claims under Rule 12(b)(6).

### 1.  Claim One: Failure to Train DIA Westin Employees

Plaintiff alleges that the DIA Westin "knew its employees were not properly trained to protect hotel guests' Fourth Amendment rights," and that this lack of training "was a danger on the premises of the DIA Westin."  (¶¶ 94, 97.)

---

[1] An invitee is "a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remain on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to remain."  Colo. Rev. Stat. § 13-21-115(6)(a).

A landowner is "an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property."  *Id.* § 13-21-115(1).

Defendant argues that Plaintiff has not plausibly alleged that DIA Westin employees' training regarding Fourth Amendment rights constitutes a "danger" about which Defendant actually knew or should have known, or that Defendant unreasonably failed to exercise reasonable care to protect about these dangers.  (ECF No. 11 at 8.) In response, Plaintiff argues that this claim is grounded in an "[i]nnkeeper's duty to protect guests' Fourth Amendment rights" and that Defendant "was required to ensure its employees were properly trained to ascertain whether the police had a warrant or [whether] an exigent circumstance existed to permit the hotel to escort the police to the hotel's tenth floor and start opening hotel room doors."  (ECF No. 12 at 5–6.)

It is well-established that the Fourth Amendment protects hotel guests from unreasonable searches and seizures.  *See Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964).  However, Plaintiff provides no legal support for his contention that a *hotel has a duty* to protect its guests' Fourth Amendment rights, or that Defendant's lack of training to protect hotel guests' Fourth Amendment rights is a "danger."  *See Beattie v. Smith*, 2013 WL 467297, at *6 (D. Kan. Feb. 7, 2013), *aff'd* 543 F. App'x 850 (10th Cir. 2013) (dismissing claims against hotel security officers where "plaintiff has failed to show how . . . hotel employees are legally responsible for the actions of [police], or that hotel employees had a duty to intervene in the police investigation").  Accordingly, the Court finds that Plaintiff has not plausibly alleged that Defendant's failure to provide Fourth Amendment training to its employees constitutes a "danger" under the CPLA.

However, even assuming that the hotel employees' lack of training of Fourth Amendment rights could be categorized as a "danger," Plaintiff alleges no facts suggesting that Defendant should have been aware of the danger.  For example,

7

Plaintiff does not allege that other guests' Fourth Amendment rights have been violated on DIA Westin property.  Nor does Plaintiff allege that: (1) employees at other hotels are trained on Fourth Amendment topics, or (2) that other hotels have written protocols for law enforcement encounters, such that Defendant should be aware that its own lack of Fourth Amendment training for its employees was deficient.  These pleading deficiencies warrant dismissal of Claim One without prejudice.

> 2.    Claim Two: Failure to Warn Plaintiff that DIA Westin's Windows Are Not Tinted

Plaintiff alleges that Defendant's "failure to tint its windows" and "failure to warn guests of north facing rooms that they were visible from the DIA terminal" were dangers on the premises of the DIA Westin about which Defendant should have been aware. (¶¶ 114–15.)

Defendant argues that Plaintiff has failed to state a claim because he cannot plausibly allege that windows, which are made to be transparent, are a danger under the CPLA.  (ECF No. 11 at 5.)  Plaintiff argues, however, that *these* windows constitute a danger.  According to Plaintiff, "[m]any high-end[,] high-rise hotels tint their windows for the privacy and comfort of their hotel guests, especially when a hotel is located such that unseen members of the public can otherwise look into the hotel's rooms and violate the privacy of the hotel's guests."  (ECF No. 12 at 9 (quoting ¶ 37).)  He contends that the reflection of light off the DIA terminal causes Defendant's windows to appear opaque and reflective, which, in turn, may cause "unsuspecting guests [to], in the privacy of their own hotel room, inadvertently expose their bodies, naked or otherwise, to people outside looking in."  (*Id.* (quoting ¶¶ 48–49, 60).)  The Court will assume, for

8

purposes of the Motion, that Plaintiff has adequately alleged that Defendant's windows are a danger under the CPLA (even if an ordinary window poses no danger).

In a recitation of the legal standard for claims under the CPLA, Plaintiff has alleged that "[t]he DIA Westin and employees knew, or should have known, that some hotel guests would mistakenly assume that their hotel windows were tinted or mirrored and therefore fail to cover their naked bodies in the privacy of their DIA Westin hotel room." (¶ 51.)  These sorts of conclusory allegations are insufficient to withstand a motion to dismiss.  *See, e.g.*, *Linton v. Comm'r of Internal Revenue*, 764 F. App'x 674, 679 (10th Cir. 2019) (recognizing that a court is not bound by [the plaintiff's] conclusory allegations, unwarranted inferences, or legal conclusions" on a Rule 12(b)(6) motion (quoting *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994)).

Significantly, the Court finds that Plaintiff has not plausibly alleged any *specific facts* that support his position that Defendant was aware, or should have been aware, that aspects of its windows could potentially lead an unsuspecting guest to erroneously conclude that the windows were opaque and expose himself.  Notably, Plaintiff does not allege that anyone has ever asked the hotel staff whether the windows are transparent, or that individuals at the DIA terminal have informed Defendant that they could see inside specific rooms.  Nor does Plaintiff allege that other hotel guests have inadvertently exposed themselves while believing that the windows were opaque. Without *specific* factual allegations suggesting that Defendant was aware of the danger, the Court cannot make the logical leap to find that Plaintiff's allegations regarding Defendant's knowledge are plausible.  *See Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177 (recognizing that a plaintiff must "nudge his claims across the line from

conceivable to plausible" in order to survive a motion to dismiss (alterations incorporated)).

Because Plaintiff has failed to plausibly plead a claim under the CLPA, Claim Two is dismissed without prejudice.

**B.      Tort Claims**

Plaintiff alleges four tort claims in the alternative to his premises liability claims: (1) negligence resulting from Defendant's failure to warn Plaintiff of dangers on its premises (¶¶ 117–27); (2) negligence resulting from Plaintiff's failure to protect Plaintiff from being harassed (¶¶ 149–57); (3) negligent hiring and training (¶¶ 158–66); and (4) intentional infliction of emotional distress (¶¶ 167–73).

Defendant argues that Plaintiff's tort claims must be dismissed because the CPLA is the sole remedy for claims against landowners.  (ECF No. 11 at 9–10.)  In response, Plaintiff represents that "if the [CPLA] applies, then Plaintiff intends to dismiss his common law claims."  (ECF No. 12 at 14.)  He contends, however, that "it is appropriate to permit Plaintiff's [tort claims] to survive at this juncture" because the CPLA only applies when a plaintiff is injured as a result of a danger on the property and Defendant has argued that no danger existed on the DIA Westin property.  (*Id.* at 14–15.)

Plaintiff's position is contradicted by the language of the CPLA, as well as controlling case law.  The CPLA includes the following provision:

> In <u>any</u> civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable <u>only</u> as provided in

10

subsection (3) of this section.

Colo. Rev. Stat. § 13-21-115(2) (emphasis added).

The Colorado Supreme Court has determined that the language of § 13-21-115(2) is "specific in its terms and without ambiguity" and demonstrates that the General Assembly intended "to completely occupy the field and supercede existing law in the area" of premises liability.  *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004).  As a result, the CPLA "abrogate[s] the common law with respect to landowner duties."  *Id.* at 330; *see also Traynom v. Cinemark USA, Inc.*, 940 F. Supp. 2d 1339, 1358 (D. Colo. 2013) (applying Colorado law and holding the CPLA precludes claims of negligent training and supervision filed against movie theater's owner).

Because Defendant has admitted that it is a landowner (*see* ECF No. 18 at 7), "it would be entirely inconsistent with the plain language of the [CPLA] and [Colorado Supreme Court precedent] to bypass the statute and allow for the imposition of liability on the basis of" tort claims.  *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 574 (Colo. 2008) (en banc).  Accordingly, Plaintiff's tort claims (Claims Three, Five, Six, and Seven) are dismissed with prejudice.

## C.    Section 1985(3) Claim

Plaintiff asserts that Defendant entered into a conspiracy with the DPD to interfere with Plaintiff's civil rights under the Fourth Amendment to the United States Constitution and Article II, section 7 of the Colorado Constitution, in violation of 42 U.S.C. § 1985(3).  (¶¶ 128–48.)  Specifically, Plaintiff contends that Defendant's "choice to conspire with the [DPD] . . . was motivated by the fact that Plaintiff was reported to be a naked adult male" and that Defendant would have acted differently if the "naked

11

individual was a female or child."  (¶¶ 142–43.)

To state a claim under § 1985(3), a plaintiff must allege that the defendant: (1) conspired, (2) to deprive the plaintiff of equal protection or equal privileges and immunities under the law, (3) acted in furtherance of this objective, and (4) injured the plaintiff or deprived him of any right or privilege as a result.  *See Wolfson v. Bruno*, 265 F. App'x 697, 698 (10th Cir. 2008) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).  "The intent behind the conspiracy must be based on some invidious discriminatory animus, such as racial or otherwise class-based animus."  *Id.*

Defendant argues that the claim must be dismissed because Plaintiff has not alleged any facts suggesting that Defendant entered into a conspiracy with the DPD or intended to deprive Plaintiff of equal protection under the law or his "equal privileges and immunities" of the laws.  (ECF No. 11 at 13–14.)  In response, Plaintiff argues that he properly pled the existence of a conspiracy by alleging that Defendant conspired with the DPD "to enter Plaintiff's room in violation of his Fourth Amendment rights by not choosing to call rooms on the tenth floor to warn guests they were visible from the terminal and by instead seeking to 'catch' Plaintiff, an adult male, 'red handed.'" (¶ 141.)  In other words, Plaintiff argues that the existence of a conspiracy can be inferred through Defendant's *inaction*.

However, "[t]o state a claim under § 1985(3), a plaintiff must first show that the defendants conspired—that is, reached an agreement—with one another."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017).  Plaintiff has not alleged that Defendant entered into any agreement—express or tacit—with the DPD.  Thus, Plaintiff has failed to allege the existence of a conspiracy.

Moreover, apart from Plaintiff's conclusory assertion that Defendant's decision to not call rooms on the tenth floor was motivated by an intent to catch Plaintiff "red handed" because he is male, Plaintiff alleges no facts supporting the notion that Defendant's conduct was motivated in any way by gender-based discriminatory animus. He does not allege that any DIA Westin employees made any specific comments to him that would suggest that Defendant's conduct was motivated by discrimination.  Nor does Plaintiff allege that Defendant has a history of attempting to "catch" other males exposing themselves from their hotel rooms.  Thus, the Court finds that Plaintiff has failed to plausibly allege that Defendant's conduct was motivated by an intent to deny Plaintiff equal privileges and immunities under the law.

Even putting these pleading deficiencies aside, Plaintiff is still unable to properly plead a § 1985(3) claim.  Although Plaintiff cites other circuits which have allowed § 1985(3) claims involving gender-based discrimination, the Tenth Circuit has held that § 1985(3) does not extend to "classes other than those involved in the strife in the South in 1871 with which Congress was then concerned."  *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983), *cert. denied,* 465 U.S. 1103 (1984) (recognizing that handicapped persons are not a class within the meaning of § 1985); *see also Ramsey v. Sw. Correctional Med. Grp.*, 2019 WL 3252181, at *16 (D. Colo. July 19, 2019) (recognizing that "the Tenth Circuit has never revisited [its holding in *Wilhelm*] and there is no intervening authority from the United States Supreme Court that casts any direct doubt on it").  Applying Tenth Circuit precedent, the Court finds that Plaintiff cannot state a claim under § 1985(3) because males, as a class, are not among those to which § 1985(3) was intended to apply.  *See Moore By & Through Blakely v. City & Cnty. of*

*Denver, Colo.*, 744 F. Supp. 1028, 1031 (D. Colo. 1990) (concluding that Caucasian males are not a group protected by § 1985(3)).

Accordingly, Claim Four is dismissed with prejudice.

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion to Dismiss Amended Complaint (ECF No. 11) is GRANTED;

2.      Claim One and Two of Plaintiff's Amended Complaint (ECF No. 9) are

DISMISSED WITHOUT PREJUDICE; and

3.      Claims Three, Four, Five, Six, and Seven of Plaintiff's Amended Complaint (ECF

No. 9) are DISMISSED WITH PREJUDICE.

Dated this 14th day of January, 2021.

BY THE COURT:

William J. Martinez
United States District Judge

14